IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **MANSFIELD SEQ. 287 & DEBBIE LTD.,** | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. **3:10-CV-2204-L** |
| | § | |
| **CITIBANK, N.A.,** | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court are Defendant Citibank, N.A.'s Motion to Dismiss, filed December 20, 2010; and Defendant Citibank, N.A.'s Motion to Dismiss and to Strike, filed February 7, 2011. After carefully considering the motions, response, reply, and applicable law, the court **denies as moot** Defendant Citibank, N.A.'s Motion to Dismiss, filed December 20, 2010 and; **grants** Defendant Citibank, N.A.'s Motion to Dismiss and to Strike, filed February 7, 2011.

**I. Factual and Procedural Background**

This action arises out of a construction loan agreement. On October 15, 2010, Mansfield SEQ 287 & Debbie Ltd. ("Plaintiff" or "Mansfield") filed Plaintiff's Original Petition (the "Petition") in the 101st Judicial District Court of Dallas County, Texas. In the Petition, Plaintiff sought claims for declaratory judgment and temporary injunction. Citibank, N.A. ("Defendant" or "Citibank") timely removed this action on November 2, 2010.

On November 3, 2010, Plaintiff filed a Notice of Application for Temporary Restraining Order. On November 4, 2010, the court held a hearing on Plaintiff's Application. During the course of the hearing, the parties reached an agreement as to Plaintiff's Application. As a result of the agreement, the court denied as moot Plaintiff's Application. On November 23, 2010, Plaintiffs filed

a Second Motion for Temporary Restraining Order, seeking to restrain Defendant from breaching an agreement between the parties. On December 14, 2010, Plaintiff filed a Notice of Withdraw[al] of Application for Injunctive Relief and notified the court that the parties settled the TRO issue. Plaintiff filed its Fourth Amended Complaint ("Complaint"), the live pleading, on January 12, 2011. Plaintiff asserts claims for declaratory judgment, breach of contract, and business disparagement. Plaintiff also seeks damages, attorney's fees, and costs.

On November 30, 2007, Plaintiff and Defendant entered into a Construction Loan Agreement ("Agreement"), whereby Defendant was to loan Plaintiff $23,155,000 for site development, construction of improvements, and other costs related to the development of Mansfield Pointe (the "Project"), a retail center located in Mansfield, Texas. The Project, a 148,000 square foot retail center was completed in 2008. Plaintiff states that at all times during the pendency of this lawsuit, the Property has been approximately 80% leased. Pursuant to the terms of the Agreement, the Note ("Note") matured on November 29, 2010 (the "Original Maturity Date"). The Agreement had an Extension Clause ("Extension Clause") that allowed the parties to extend the maturity date, subject to certain preconditions.

On September 9, 2010, Mansfield sent Citibank notice that it was invoking its rights under the Agreement to extend the Original Maturity Date. On October 7, 2010, Defendant responded to the correspondence, setting forth its position that in exercising its discretion, it would not allow Plaintiff to extend the maturity date because certain preconditions were allegedly not met. Defendant further stated that Plaintiff should be prepared to pay off the Note in full on the Original Maturity Date. Plaintiff then took the position that Defendant breached the terms of the Agreement and filed this lawsuit on October 15, 2010. On November 19, 2010, Defendant sold the Note to

Square Mile III Structured Debt (One) LLC and Square Mile Structured Debt (Two) LLC (collectively, "Square Mile"). In mid-December 2010, Square Mile agreed to extend the Note's maturity date and dropped any claim of default against Plaintiffs.

On February 7, 2011, Mansfield filed a motion to dismiss Plaintiff's breach of contract and declaratory judgment claims. It contends that Plaintiff fails to state a claim upon which relief can be granted. Plaintiff contends that it states a claim for which relief can be granted with respect to the breach of contract and declaratory judgment claims. Defendant further seeks to strike certain statements from Plaintiff's Fourth Amended Complaint, contending that such statements are immaterial, harassing, and prejudicial allegations. Plaintiff disagrees.

## II. Defendant's Motion to Dismiss for Failure to State a Claim

Defendant moves to dismiss Plaintiff's breach of contract and declaratory judgment claims. Defendant contends that Plaintiff's Fourth Amended Complaint fails to state how Citibank breached the Loan Agreement, that Defendant had the right under the contract to perform in the allegedly "breached" manner, and that Plaintiff has not adequately pleaded damages. Defendant also alleges that Plaintiff fails to state a claim for declaratory judgment. Specifically, Defendant contends that Plaintiff's claim for declaratory judgment is moot because there is no continuing relationship between the parties. Defendant further alleges that Plaintiff's declaratory judgment claim is duplicative of the breach of contract claim. Mansfield counters that it alleges sufficient facts to support causes of action for breach of contract. Mansfield also argues that the declaratory judgment claim brings a live, justiciable controversy and is not duplicative. The court addresses each argument and claim in turn.

### A. Standard for Rule 12(b)(6) - Failure to State a Claim

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F. 3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F. 3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496,

498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

    B.    <u>Discussion</u>

        1.    **Breach of Contract**

Defendant contends that Plaintiff's Fourth Amended Complaint fails to state a claim for breach of contract because Citibank had the right to refuse to extend the Note's maturity date. Specifically, Defendant states that no provision in the loan agreement required that the lender agree to extend the Note prior to the Original Maturity Date. Defendant alleges that the Agreement gave it discretion to determine whether to extend the terms of the Note past the Original Maturity Date. Defendant contends that Plaintiff cannot ignore the express language of the terms of the Agreement.

Defendant further alleges that even if the terms of the Agreement are not subject to its discretion, Plaintiff cannot claim anticipatory repudiation because after Mansfield received the October 7, 2010 letter, it continued to accept the benefits of the Loan Agreement. Defendant alleges that Mansfield continued to make payments on the Note and had access to working capital amounts available under the Loan Agreement. Defendant further contends that Mansfield negotiated with Square Mile and obtained an extension of the Note. Defendant alleges that Plaintiff's continued negotiations with respect to the Agreement after the alleged repudiation was a clear ratification of the loan agreement. Therefore, Defendant contends that it cannot be liable for breaching an obligation to extend the Original Maturity Date.

Plaintiff responds that the Complaint creates a reasonable inference that Defendant committed an anticipatory repudiation of the Agreement and, thus, breached the contract. Plaintiff states that the court does not have to decide whether Defendant's alleged excuse was "material" at this stage of the litigation because it is a question of law. Plaintiff further responds that Defendant acted in bad faith by failing to extend the Original Maturity Date. Plaintiff contends that the court should imply a duty of good faith and fair dealing. Mansfield further responds that Defendant's denial gave them the right to treat the refusal to extend the Note as a total breach and sue for damages.

In reply, Defendant contends that there is no implied duty of good faith and fair dealing in the Agreement. Defendant states that Texas law disfavors implying extra-contractual obligations on parties to an express contract. Furthermore, Defendant contends that Mansfield's anticipatory repudiation fails because it never accepted the alleged repudiation. Defendant states that Plaintiff

continued to insist that the purchaser of the Note extend the Agreement, and, thus, Plaintiff was able to enjoy the benefits derived from it.

To state a claim for breach of contract, a plaintiff must show "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l v. Egle Grp.*, LLC, 490 F.3d 380, 387 (5th Cir. 2007) (citation omitted) (relying on Texas law). Here, the third and fourth elements are in dispute.

Mansfield's claim for breach of contract is based in part on Defendant's October 7, 2010 letter refusing to extend the Original Maturity Date of the Note, which Mansfield alleges was breach by repudiation. Citibank contends that the decision to extend the Original Maturity Date was at its sole discretion and was expressly provided for in the Agreement. Therefore, the viability of Plaintiff's breach of contract claim depends upon whether the Agreement provided Defendant with the discretion to refuse to extend the Original Maturity Date of the Note. As Plaintiff did not attach a copy of the Agreement to its pleadings and Defendant did not attach a copy to its motion to dismiss, the court cannot consider the Agreement as a whole. The court can consider only those parts of the Agreement referenced by the parties.

When a court construes a written contract, "the primary concern of the court is to ascertain the intentions of the parties as expressed in the instrument." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). Section 2.8 ("Extension Clause") of the Loan Agreement provides in relevant part:

> Extension of Original Maturity Date. Borrower shall have the right to extend the term of the Note from the Original Maturity Date to the First Extended Maturity Date, subject to the satisfaction (as determined by Lender in Lender's discretion) of the following terms and conditions precedent:

(a) Borrower shall provide Lender with written notice of Borrower's election to exercise this extension not more than ninety (90) days, but not less than thirty (30) days, prior to the Original Maturity Date, and borrower's failure to timely exercise this option in accordance herewith shall be deemed a waiver and relinquishment of the one-time right to exercise this extension option.

(b) On the Original Maturity Date, there shall exist no Potential Default of Event of Default hereunder.

(c) No change has occurred which has had or could have a Material Adverse Effect.

(d) All conditions for the final advance for hard costs shall have been previously satisfied as provided in Section 7.5 and Lender shall have received evidence satisfactory to it that the Budget contains sufficient reserves for payment of interest expenses, tenant improvement allowances and leasing commissions to be incurred during the extension period.

(e) If reasonably requested by Lender, the Deed of Trust shall be amended to reflect extension of the Original Maturity Date and the title Policy shall be endorsed to provide that coverage of the title Policy has not terminated or been reduced by reason of the extension of the Original Maturity Date and with such other endorsements as may be required by Lender.

(f) If the assignment of Management Agreement has not previously been executed, Borrower and Manager shall have executed and delivered the Assignment of Management Agreement to Lender.

(g) Borrower shall have released Lender from any claims, causes of action, or demands Borrower may have against Lender or defenses or offsets to the payment of the Loan or any other amounts due under the Loan Documents.

(h) If requested by Lender, Lender shall have received copies of and approved, which approval shall not be unreasonably withheld, all contracts and agreements in existence as of the Original Maturity Date related to or which affect all or any portion of the operation or use of any portion of the Project, including all Management Agreements, all service contracts, and all utility, maintenance and security contracts, but excluding Leases.

> (i) On or before the Original Maturity Date, Borrower shall have delivered to Lender evidence satisfactory to Lender that the Project has achieved a Hypothetical Debt Service Coverage Ration of not less than 1.15 to 1.00 for the immediately preceding Computation Period. For purposes of this calculation, the Principal Debt shall be determined as of the last day of the Computation Period, and Net Operating income shall be calculated for the Computation Period. Borrower may prepay the Principal Debt to the extent necessary to achieve the required Hypothetical Debt Service Coverage Ratio (and in such event, Borrower shall also pay any loss as a result thereof, in accordance with Section 3.5).
>
> (j) Borrower shall have paid all reasonable expenses incurred by Lender in connection with the review and approval of the extension, including all reasonable fees and expenses of counsel for Lender.
>
> (k) On the Original Maturity Date, Borrower shall have paid lender a non-refundable extension fee in the amount of 0.25% of the outstanding principal balance of the Loan as of the Original Maturity Date.

Pl.'s Compl. at 4. The Agreement further defines Material Adverse Effect ("MAE") as:

> (i) a material adverse effect upon the validity or enforceability of any of the Loan Documents, (ii) a material adverse effect upon, the condition (financial or otherwise), business, assets, prospects, or operations of Borrower, or any other Loan Party, (iii) a material impairment of the ability of Borrower, or any other Loan Party to fulfill its obligations under the Loan Documents, or (iv) a material impairment of the value of any collateral from time to time securing the Obligations or the ability of Lender to realize thereon.

Pl.'s Compl. at 6.

Defendant contends that it legitimately refused to extend the Original Maturity Date because there was a MAE with respect to the value of the collateral. Plaintiff responds that Defendant's interpretation of the Agreement is unreasonable and that Defendant exercised its discretion in bad faith.

After reviewing the parties' contentions and the pleadings, the court determines that Plaintiff has failed to set forth facts to establish, or from which the court can reasonably infer, that Defendant breached the terms of the Agreement by determining that a MAE occurred and exercising its discretion to refuse to extend the Original Maturity Date. The plain language of Section 2.8 of the Agreement reflects that Defendant had the discretion to refuse to extend the Original Maturity Date of the Note, if one of the eleven conditions precedent was not satisfied. Thus, with respect to whether an MAE occurred, the parties contracted to allow Defendant to extend the terms of the Note subject to its satisfaction as determined by its discretion.

The court rejects Plaintiff's argument that the court should look at the Agreement as a whole and determine that it properly stated a claim for breach of contract. It is well-established that in ruling on a motion to dismiss for failure to state a claim, "the district court must not go outside the pleadings." *Scanlan v. Texas A&M University,* 343 F.3d 533, 536 (5th Cir. 2003). This rule is strictly construed, and the one exception is that a court may consider documents that a defendant attaches to a motion to dismiss that are referred to in a plaintiff's complaint and are central to the plaintiff's claims. *Id.* (citing *Collins,* 224 F.3d at 498-99.) Thus, the court cannot look at the entire Agreement because Plaintiff failed to attach it to its pleadings, and Defendant did not attach it to its motion.

Additionally, the court will not imply a duty of good faith and fair dealing to the Extension Clause. Under Texas law, it is well-established that "there is no general duty of good faith and fair dealing in ordinary arm's length commercial transactions." *Formosa Plastics Corp. USA v. Presido Engi'rs and Contractors, Inc.,* 960 S.W.2d 41, 52 (Tex. 1998). Further, Texas courts have rejected the notion that every contract has an implied covenant of good faith and fair dealing. *See English*

*v. Fischer,* 660 S.W.2d 521, 522 (Tex. 1983) (cautioning that an implied covenant of good faith and fair dealing would "let each case be decided upon what might seem 'fair and in good faith' by each fact finder," which the Texas Supreme Court was unwilling to allow). The court refuses to insert such an arbitrary requirement which would be clearly contrary to established Texas law and the express terms of the Agreement. If the parties intended to divest Defendant of discretion, the parties should have contracted for such a right. Further, this is a $23 million Construction Loan Agreement for the construction of a large, retail establishment. The parties to the Agreement are sophisticated. The court can see no reason why it should imply a general duty of good faith and fair dealing in this ordinary arm's length commercial transaction.

Further, the court rejects Plaintiff's argument that when performance is conditioned on one party's judgment or determination, courts imply a requirement that such judgment is exercised in good faith. The cases cited by Plaintiff, *Hackberry Creek Country Club v. Hackberry Creek Homeowners' Association,* 205 S.W.3d 46, 59 (Tex.App.—Dallas 2006, pet. denied); and *Young v. Neatherlin,* 102 S.W.3d 415, 420 (Tex.App. —Houston [14th Dist.] 2003, no pet.), are factually inapposite to this case. *Hackberry* and *Young* are both appellate cases that distinguish well-established Texas Supreme Court jurisprudence.

The agreement at issue in *Hackberry* was illusory in that the agreement "yield[ed] no clear indication that the parties understood they were leaving [the payment amount] to the . . . sole and absolute discretion of the [Defendant] with no standards for determining that amount." *Hackberry,* 205 S.W.3d at 59. In *Hackberry*, the court determined that under *those circumstances* an implied duty of good faith was warranted to protect the parties. *Id.* Here, the Agreement is distinguishable because the parties expressly agreed that eleven conditions precedent governed Citibank's discretion

**Memorandum Opinion and Order- Page 11**

in determining whether the maturity date should be extended. Unlike *Hackberry,* the eleven conditions precedent in this case provided standards for Citibank's discretion. Further, the plain language of the Agreement is clear in that the parties understood that they were leaving the decision to extend the Original Maturity Date to the satisfaction of Defendant. Given the sophistication of the parties and the nature of the commercial transaction, the parties were well aware of the consequences of their Agreement.

The contract in *Young* used broad language that "reserve[d] the right to deem [the] contract null and void, if in [Defendant's] opinion there [were] obstacles and/or circumstances that would make it unfeasible to [perform]." *Young,* 102 S.W.3d at 420. *Young* is distinguishable because the *Young* court examined a contract provision that would declare the entire contract null and void. Here, the provision at issue merely extends the terms of the Agreement and does not make an illusory promise. The parties contracted and agreed to an Extension Clause that provided eleven *specific and enumerated* conditions precedent that made the extension discretionary. Consequently, the court determines that *Hackberry* and *Young* are distinguishable in this case and are not controlling.

Accordingly, the court determines that the Agreement effectuates the parties' intent that the option to extend the Original Maturity Date was subject to Defendant's satisfaction as determined by its discretion regarding the eleven prerequisites. The court determines that Plaintiff fails to set forth facts that establish the third element of a claim for breach of contract.

Finally, the court rejects Plaintiff's anticipatory breach of contract theory as a basis that Defendant breached the Agreement. An anticipatory repudiation of a contract may consist of either words or actions by a party to the contract that indicate an intention that the party is not going to

**Memorandum Opinion and Order- Page 12**

perform the contract according to its terms. *Builders Sand, Inc. v. Turtur*, 678 S.W.2d 115, 120 (Tex.App.-Houston [14th Dist.] 1984, no writ). The declaration of intent to abandon the obligation must be in positive and unconditional terms. *Preston v. Love*, 240 S.W.2d 486, 487 (Tex.Civ.App.-Austin 1951, no writ) (citing *Kilgore v. Northwest Tex. Baptist Educ. Soc.*, 90 Tex. 139, 37 S.W. 598, 600 (1896)). A claim for anticipatory repudiation does not lie when a party makes a genuine mistake or misunderstands matters of fact or law that cause that party not to comply with its obligations. Rather, the party must recognize its duties but refuse to perform them. *Id.* The allegations of the Complaint, as set forth, do not allege sufficient facts to establish that Defendant committed an anticipatory repudiation of the Agreement. Accepting Plaintiff's allegations to be true regarding anticipatory repudiation, Defendant was well within its rights under the contract. Accordingly, when a party acts within its rights under the contract, there can be no anticipatory repudiation. Therefore, Plaintiff fails to set forth sufficient facts to support a breach of contract claim, and Defendant is entitled to dismissal of the claim. As Plaintiff failed to sufficiently plead a breach, the court finds it unnecessary to determine whether Plaintiff adequately pleaded damages as an element of a breach of contract claim.

### 2. Declaratory Judgment

In its Fourth Amended Complaint, Mansfield seeks a declaratory judgment from the court to interpret the meaning of the MAE clause and the parties' obligations arising out of the MAE clause. Defendant contends that Mansfield's claim for declaratory judgment should be dismissed because (1) there is no continuing relationship between the parties and (2) the declaratory judgment claim is duplicative of the concurrently-pleaded breach of contact claim. Mansfield responds that

the interpretation of the Agreement's MAE clause presents a justiciable controversy and that the declaration is not duplicative of the breach of contract claim.

Pursuant to "[t]he Declaratory Judgment Act . . . federal courts [are authorized] to declare the rights and other legal relations of any interested party seeking such declaration." *Val-Com Acquisitions Trust; Sopha Vongkham v. Chase Home Finance LLC; JP Morgan Chase Bank, N.A.*, No. 10-11192, 2011 WL 3241957, at *1 (5th Cir. July 27, 2011) (citations omitted). "[A] declaration may issue only to resolve an actual controversy between the parties. An actual controversy is a dispute that is definite and concrete, touching the legal relations of parties having adverse legal interests." *Id.* (citations omitted). Also, "[t]he controversy must be such that it can presently be litigated and decided and not hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may never develop." *Id.* (citations omitted). Further, the "plaintiff[] ha[s] the burden of establishing the existence of an actual controversy under the Act." *Id.* (citations omitted).

Here, Plaintiff has failed to allege or show that Defendant is the owner of the Note or a current party to the Loan Agreement. On November 19, 2010, Square Mile III Structured Debt (One) and Square Mile III Structured Debt (Two), LLC (collectively, "Square Mile") acquired Citibank's interest in the Note. Accordingly, Citibank is neither the owner of the Note nor a current party to the Agreement; and Square Mile's acquisition of the Note effectively rendered any declaration regarding the interpretation of Defendant's obligations under the Loan Agreement moot. There is no longer an actual controversy with regard to Defendant's obligations under the Note, and, thus, the court has no basis to declare the obligations or rights of Plaintiff or Citibank.

In the alternative, because the court herein determined that Defendant did not breach the terms of the Agreement, Mansfield is not entitled to an interpretation of the MAE clause. Further, the court believes that this claim is in essence duplicative of Plaintiff's breach of contract claim. Therefore, no claim for a declaratory judgment exists.

### III.     Defendant's Motion to Strike

#### A.     Legal Standard- Motion to Strike

The court may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. P. 12(f). The court may act *sua sponte* or on motion made by a party either before the party responds to the pleading if a response is allowed or within 21 days of being served if a response is not allowed. *Id.* "[S]uch deficiencies do not normally justify dismissal of the suit on the merits and without leave to amend, at least not in the absence of special circumstances." *Cates v. Int'l Tel. & Tel. Corp.*, 756 F.2d 1161, 1180 (5th Cir. 1985). "Motions to strike alleged redundant, immaterial, impertinent or scandalous matter are not favored. Matter will not be stricken from a pleading unless it is clear that it can have no possible bearing upon the subject matter of the litigation." *Craig Funeral Home, Inc. v. State Farm Mut. Auto. Ins. Co.*, 254 F.2d 569, 572 (5th Cir. 1958) (Rives, J., concurring) (citation omitted).

#### B.     Analysis

Defendant moves to strike several allegations in the Complaint. Defendant moves to strike allegations related to its financial condition. Further, Defendant moves to strike allegations related to its alleged capital and liquidity portfolios. Defendant contends that Plaintiff improperly pleaded allegations that are immaterial and scandalous. Plaintiff disagrees.

### 1. Allegations Related to Citibank's Financial Condition

Defendant states that paragraphs 8-10 of the Complaint improperly discuss Citibank's financial condition. Defendant states that paragraph 8 contains generic allegations of potential financial risk to Citibank, paragraph 9 includes a discussion of an internal Citibank e-mail relating to Citibank's residential mortgage portfolio, and paragraph 10 includes allegations relating to Defendant's involvement with the Troubled Asset Relief Program. Defendant contends that none of the aforementioned paragraphs has any bearing on the commercial loan transaction before the court. Further, Defendant states that paragraphs 8-10 contain unnecessary, irrelevant historical allegations that were included solely for their prejudicial effect. Plaintiff responds that the aforementioned paragraphs are part of the public domain and that Defendant does not contest their accuracy.

The court agrees with Defendant and strikes paragraphs 8-10. The statements in paragraphs 8-10 are immaterial and do not have any bearing on Plaintiff's remaining claim for business disparagement. In response, Plaintiff does not allege that the statements advance its case. Given the prejudicial nature of the allegations and their lack of value to Plaintiff's claims, the court will strike the statements in paragraphs 8-10 from the Complaint as immaterial.

### 2. Allegations Relating to Citibank's Alleged Capital and Liquidity

Defendant further moves to strike the statements found in paragraphs 28-31 of the Complaint. Defendant states that the allegations refer to taxpayer assistance to Citibank, Defendant's financial performance in 2009, and two transactions that are allegedly unrelated to the Loan Agreement at issue. Defendant contends that the allegations are immaterial to the substance of Plaintiff's claims. Plaintiff responds that the allegations are material to proving Citibank's motive

and alleged bad faith exercise of discretion when it denied Mansfield's request to extend the Note's Original Maturity Date.

The court strikes the allegations. As stated herein, the court will not imply a duty of good faith and fair dealing to Defendant's exercise of discretion. Further, Plaintiff failed to state a claim for breach of contract. As such, the allegations in paragraphs 28-31 are immaterial to the remaining claim in Plaintiff's lawsuit. Accordingly, the court strikes paragraphs 28-31 of Plaintiff's pleading.

## IV. Conclusion

For the reasons herein stated, the court determines that Plaintiff fails to state legally cognizable claims upon which relief can be granted for breach of contract and declaratory judgment. Therefore, the court **grants** Defendant Citibank, N.A.'s Motion to Dismiss and **dismisses** Plaintiff's breach of contract and declaratory judgment claims **with prejudice**. The court also **grants** Defendant Citibank, N.A.'s Motion to Strike and **strikes** paragraphs 8-10 and 28-31 from Plaintiff's Fourth Amended Complaint. In light of the Plaintiff's Fourth Amended Complaint, filed after Defendant's initial motion to dismiss, the court **denies as moot** Defendant Citibank, N.A.'s Motion to Dismiss, filed December 20, 2010. The sole claim remaining in this lawsuit is for business disparagement.

**It is so ordered** this 5th day of August, 2011.

                                          Sam A. Lindsay
                                          United States District Judge